## Woodard *vs* Fitzpatrick.

Appeal from the Pulaski Circuit.

*Mortgagor and mortgagee. Practice in chancery.*

Chief Justice Robertson delivered the Opinion of the Court.

The principles for determining the rights of these parties were settled by this Court in an opinion reported in 9 *Dana*, 117.

In execution of the mandate of this Court, the Judge below appointed commissioners, whose report was afterwards approved; and thereupon, after directing the reported credits, he rendered a peremptory decree for selling the mortgaged slaves for the balance still remaining due to the mortgagee; and the mortgagor again appeals to this Court, and complains, 1st, that he has not been allowed for hire, as much as he is entitled to claim, and, 2dly, that the decree for sale was erroneous.

The first general objection to the decree is not, in our opinion, maintainable. *Fitzpatrick* is charged by the commissioners and by the decree with as much for the use of the slaves, whilst in his own service, as the testimony authorized, and he is charged with the whole amount for which he hired them to others whilst they were not in his own immediate possession. This was certainly as much as equity could exact from a mortgagee for profits of the mortgaged property, who, when not guilty of fraud or culpable negligence, is never required to account for more than what he received in the use by himself or for hire from others. In hiring the slaves, the mortgagee in this case seems to have acted in good faith, and to have reserved a reasonable hire, to-wit, $10 a month for each of them; and we may well doubt whether he ought to have been, as he was, charged with the whole price without any abatement for occasional loss of time or for incidental expense; for by his contract of hiring by the month, every day lost by the slaves was to be deducted in the computation of the time of their service, and all medical charges were also to be borne by him;

Equity will require mortgagee to account for the value of the hire of slaves whilst in his possession, and the amount for which they were hired to others by him, up to the rendering of the final decree·

and even without express proof, we might presume that in the course of one year, some abatement from the aggregate price of monthly hire, ($120) had resulted from loss of time or otherwise, according to the contract: nevertheless, Fitzpatrick is charged with the entire $120 a year for each of the slaves: more, certainly, could not be reasonably demanded.

Nor are we disposed to disapprove the credit allowed in the decree for $100 paid by *Fitzpatrick* to *Woodard* in 1836, as proved and not controverted before the commissioners. As there was no proof of that payment when the former opinion, *supra*, was delivered, we said then that he appeared to be justly chargable for the entire value of the use of the slaves for the year 1836; but as he was permitted to prove that payment before the commissioners, we will not be so rigorous as to refuse credit for it, merely because he had not proved the fact sooner—and especially as the charge against him for hire rather seems to be exorbitant for a portion of the time whilst the slaves were in the service of his bailees. In the report of the commissioners, as approved by the final decree, we perceive nothing of which *Woodard* ought to complain.

On bill filed by mortagor to redeem, if a balance be found by the chancellor still remaining due, it is error to decree a sale forthwith of the mortgaged property; day should be given to mortgagor to make payment, and in default of payment in a reasonable time, to be prescribed by the chancellor, then to dismiss his bill absolutely, or a sale if either party desire it.

But the decree for selling the slaves was, not only premature and irregular, but altogether anomalous and unauthorized. No such decree had been sought by either party; and this Court having decided that *Woodard* had a right to redeem the slaves, the only allowable decree was to give him a reasonable day for paying the amount ascertained to be due to *Fitzpatrick,* and in the event of payment, to have compelled a restitution of the slaves, and in the event of unreasonable failure to pay, to have dismissed his bill absolutely, and thereby barred his equity of redemption as sought to be enforced, or decreed the sale of the slaves if either party desired it.

*Woodard* had an unquestionable right to some indulgence. He did not know whether any thing or how much would be due to *Fitzpatrick* until the Circuit Judge rendered the decree for selling the slaves which he was seeking to redeem. When the Judge determined that a balance remained due to the mortgagee, he ought to have

fixed the exact amount thereof in his decree, instead of referring, as he did, to a commissioner to make the calculations out of Court and in vacation; and when fixed, he ought to have given a reasonable and prescribed day for paying the ascertained balance in Court, reserving, of course, as would have been implied, the right to extend the day, if sufficient cause for such further indulgence should be made to appear.

The decree for a sale of the mortgaged slaves is, therefore, erroneous, and must be reversed and the cause remanded, with instructions to ascertain the precise amount which the mortgagor should still pay to the mortgagee, and to give a reasonable day for payment thereof in Court, and in the event of non-payment, to dismiss the bill absolutely, or decree a sale as before suggested; but if payment shall be made as required, within reasonable time, to compel a restitution of the slaves and then deliver over to the mortgagee the money deposited in Court to his use. A prolongation of the account for interest and for hire, to the date of such final decree will, of course, be proper.

Decree reversed, &c.

*Owsley* for appellant; *Harlan* for appellee.